## Lee v. Commonwealth.

(Decided May 1, 1925.)

### Appeal from Laurel Circuit Court.

1. Criminal Law—Refusal to Exclude Incompetent Evidence Solely Because Not Objected to Error.—Court's refusal to exclude evidence that defendant's reputation for peace and quietude was "rather bad," solely because not objected to when offered, though he admitted its incompetence, held error.

2. Criminal Law—Newly Discovered Evidence Held Sufficient to Warrant Granting of New Trial.—Where defendant testified deceased was advancing on him with a butcher knife, but all other testimony was to effect that deceased was unarmed, and that no butcher knife was found nearby, newly discovered evidence of one who would testify that immediately after tragedy he found a butcher knife near deceased's body, and picked it up, held sufficiently material to require a new trial, especially where defendant was unable to employ counsel and fact that such witness was at scene of homicide was not known until after trial.

REAMS & JOHNSON, LEWIS & LEWIS and FINLEY HAMILTON for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clarke—Reversing.

Appellant seeks reversal of a judgment convicting him of manslaughter and fixing his punishment at confinement in the penitentiary for 21 years.

The reasons assigned therefor are, the refusal (1) to exclude evidence that his reputation for peace and quietude was "rather bad," and (2) to grant him a new trial for newly discovered evidence.

Admitting its incompetence, the court refused to exclude the complained-of evidence for the sole reason that it was not objected to when offered. This was error, but whether prejudicial or not we need not decide, since we have reached the conclusion that a reversal must be ordered for the refusal to grant a new trial because of newly discovered evidence.

Defendant shot and killed Will Clark, in the dining room in the home of Russell McKee. Only three parties were present at the time, and according to the evidence of McKee, who testified for the Commonwealth, decedent was unarmed and standing quietly by the window, when defendant, for no apparent reason, shot and killed him. According to the testimony of defendant, he shot only in his necessary self-defense, as decedent was advancing upon him and about to strike him with a butcher knife. Corroborating the testimony of McKee, and contradicting that of defendant, some four or five witnesses testified for the Commonwealth that when they arrived at the scene of the difficulty, the body of decedent was lying on the floor, that he was unarmed, and that there was no butcher knife on the floor or in the room, so far as they noticed.

These witnesses included the sheriff, county attorney and several other thoroughly reputable witnesses, but none of them arrived upon the scene until some time after the difficulty, and McKee testified that, while he owned such a butcher knife as the one described by the defendant, it was put away in a drawer at the time of the difficulty, and not on the table or a nearby cabinet, from one or the other of which defendant had testified decedent grabbed it as he started at him.

Defendant and McKee are negroes, as was decedent, and their evidence is wholly irreconcilable, but it will be seen that defendant's evidence was not only not corroborated by the testimony of any witness, but was thoroughly discredited upon the crucial question with refer-

ence to the butcher knife, by every witness who arrived on the scene after the difficulty.

The newly discovered evidence is that of Frank Riley, a white man, who avers in his affidavit, filed in support of the motion for a new trial, that a few minutes after the tragedy, and before the arrival of any of the witnesses who testified for the Commonwealth, he went to the room where the killing occurred, and found decedent's body lying on the floor, unattended, and that near it, on the floor, he found a butcher knife like the one described by the defendant in his evidence, and a small, round bottle; that he picked up the knife and placed it on a dining table, upon which there were knives, forks, dishes, etc., and that he set the bottle over near the wall on the floor. Several of the later arrivals, who testified for the Commonwealth, had testified to seeing the bottle on the floor near the wall, and McKee, that he left the body unattended to go for an officer immediately after the shooting.

The materiality and possible controlling weight of this testimony is at once apparent. Defendant was arrested immediately after the difficulty, and remained in jail until the trial. He was unable to employ counsel, and was defended by attorneys appointed by the court. No one seems to have known of Riley's having been at the scene of the tragedy until after the trial, when he made that fact known upon being told that it had been proved on the trial that there was no butcher knife in the room at the time of the killing.

It affirmatively appears, without contradiction, that Riley is a "truthful and honorable white man," a resident of the community, and wholly disinterested, and that neither the defendant nor any of his attorneys knew, or by the exercise of reasonable diligence could have known, of his presence at the place of the difficulty, almost immediately thereafter, or that he knew anything about it.

The evidence of this witness seems to us of such importance as to demand that the defendant shall have the benefit of it, and that the court erred in refusing to grant a new trial because thereof.

Wherefore, the judgment is reversed, and the cause remanded for proceedings consistent herewith.